UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM MEJIA, on behalf of himself and all similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>TRUTHFINDER, LLC,<br><br>　　　　　　　　　　Defendant. | Case No.: 22-cv-1010-CAB-AGS<br><br>**ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**[Doc. No. 7]** |

This matter comes before the Court on Defendant TruthFinder, LLC's ("Defendant" or "TruthFinder") motion for an order compelling arbitration and dismissing this action. [Doc. No. 7.]  The motion has been fully briefed and the Court deems it suitable for determination on the papers submitted and without oral argument.  *See* CivLR 7.1(d)(1).  For the reasons set forth below, the motion to compel arbitration is **GRANTED**.

**I.	Background**

　　**a.	Allegations in the Complaint**

Defendant is a limited liability company that acquires information about consumers from publicly available sources (i.e., "criminal and traffic records, social security number information, sex offender registries, etc."), compiles that information into a report, and offers those reports for purchase on its website. [Doc. No. 8 ¶¶ 12-13.] Plaintiff Abraham Mejia ("Plaintiff") contends that his former employer, Security Solutions Unlimited, purchased a report on him—which contained inaccurate criminal records—from Defendant on June 17, 2020, and then relied on the information in that report to terminate Plaintiff's employment. [*Id.* ¶¶ 13, 46-48.]  Defendant did not notify Plaintiff contemporaneously

that it was providing the report to his employer. [*Id.* ¶ 49.] Plaintiff alleges that because of Defendant's actions, he was left without a job, salary, or health benefits. [*Id.* ¶ 50.] On August 31, 2020, Plaintiff wrote to Defendant requesting his Section 1681g file disclosure, but Defendant "ignored and/or never responded to his letter." [*Id.* ¶ 51.]

On June 10, 2022, Plaintiff filed a putative class action complaint against Defendant in state court alleging various violations of the Fair Credit Reporting Act. [Doc. No. 1-3.] On July 12, 2022, Defendant removed the matter to this Court based on federal question jurisdiction under 28 U.S.C. §§ 1331, 1441 and 1446. [Doc. No. 1.] On September 8, 2022, Plaintiff filed an amended complaint ("FAC"). [Doc. No. 8.]

Plaintiff brings three causes of action against Defendant on behalf of himself and three proposed nationwide classes. Plaintiff first claims that Defendant failed to provide him and class members with their full file disclosure after they requested it, in violation of 15 U.S.C. § 1681g. [*Id.* ¶¶ 51, 83-97.] Plaintiff next alleges that Defendant provided consumer reports about him and class members, which were used for employment purposes, without the employer's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. §§ 1681b(b)(2) and (b)(3). [*Id.* ¶¶ 98-105.] Finally, Plaintiff alleges that Defendant wrongfully failed to provide him and class members with contemporaneous notice that it was furnishing a consumer report about them containing criminal information likely to adversely affect their ability to obtain employment, in violation of 15 U.S.C. § 1681k(a)(1). [*Id.* ¶¶ 49, 106-114.]

### b. Defendant's Motion to Compel Arbitration

On August 18, 2022, Defendant filed a motion to compel arbitration and dismiss Plaintiff's case. [Doc. No. 7.] Defendant attached the declaration of Andrew Johnson to its motion.[1] [Doc. No. 7-2.] Johnson states that he is the Business Operations Manager

---

[1] The Court may properly consider evidence outside the pleadings on a motion to compel arbitration. *Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at

for The Control Group Media Company, LLC, which provides operational support to Defendant, and that he specifically works on "monitoring and analyzing users' interactions with truthfinder.com." [*Id.* ¶ 1.] Johnson states that approximately two years prior to Plaintiff's employer purchasing a report from Defendant, Plaintiff himself purchased a TruthFinder subscription on May 31, 2018. [*Id.* ¶ 4.] On June 4, 2018, Plaintiff retrieved a report about himself from Defendant's website. [*Id.*] Plaintiff then canceled his TruthFinder account the next day. [*Id.*]

Johnson states that prior to purchasing a TruthFinder subscription, "Plaintiff must have agreed to TruthFinder's Terms of Use & Conditions of Sale (the 'Terms') two separate times" and could not have purchased a TruthFinder subscription without doing so. [*Id.* ¶¶ 5, 9.] Johnson contends that to purchase his report, Plaintiff would have had to enter his email address and click on "Continue to Report," directly above a certification stating: "By clicking 'Continue to Report' you represent that you are over 18 years of age and have agreed to our terms of use, privacy policy, and you agree to receive email from TruthFinder or its marketing partners." [*Id.* ¶ 6.] Both "terms of use" and "privacy policy" were hyperlinked. [*Id.*] Johnson states that Plaintiff would have then been directed to the order page, where he would have had to check two boxes stating:

> ☐ By clicking 'Checkout,' you agree to provide your electronic signature authorizing TruthFinder to charge your card as described in the Billing Terms, including for the automatic renewal of your membership, until you cancel. I agree to the TruthFinder Terms of Use and Privacy Policy.[2]
> ☐ I understand and agree that TruthFinder is not a 'consumer reporting agency,' as defined in the Fair Credit Reporting Act . . . and does not provide 'consumer reports,' as defined in FCRA. I understand that I am not purchasing and will not use TruthFinder's products or services for any purpose in connection with determining a person's eligibility for credit,

---

*5 (E.D. Cal. Dec. 26, 2013), *aff'd sub nom. Clean Tech Partners, LLC v. Elec. Recyclers Int'l, Inc.*, 627 F. App'x. 621 (9th Cir. 2015); *see Garcia v. Trademark Constr. Co.*, No. 18-CV-1214 JLS (WVG), 2019 WL 1317329, at *3 (S.D. Cal. Mar. 22, 2019).

[2] Johnson states that the underlined terms were hyperlinked and directed the user to the full document referred to, including Defendant's Terms of Use. [Doc. No. 7-2 ¶¶ 7-8.]

insurance, employment or for any other eligibility determination subject to FCRA.

[*Id.* at 4.]  Johnson also states that the footer of every page of TruthFinder's website displayed its hyperlinked "Terms of Use."  [*Id.* ¶ 8.]

Defendant's "Terms of Use & Conditions of Sale" (hereinafter "Terms") are attached to Johnson's declaration.  [Doc. No. 7-3 at 2-28.]  Relevant to the Court's analysis are the portions of the Terms that refer to arbitration.  First, in the introduction to the Terms, it states in capital letters and bolded font:

> THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT AND CLASS ACTION WAIVER THAT WAIVE YOUR RIGHT TO A COURT HEARING OR JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION. ARBITRATION IS MANDATORY AND IS THE EXCLUSIVE REMEDY FOR ANY AND ALL DISPUTES UNLESS SPECIFIED BELOW OR IF YOU OPT-OUT. PLEASE CAREFULLY REVIEW THE DISPUTE RESOLUTION SECTION BELOW.
>
> IT IS STRONGLY RECOMMENDED THAT YOU REVIEW THIS DOCUMENT IN ITS ENTIRETY BEFORE ACCESSING, USING OR BUYING ANY MEMBERSHIP PLAN THROUGH THE WEBSITES. YOU ACCEPT THE TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT IN FULL IF YOU USE OR MAKE A PURCHASE ON THE WEBSITES. IF YOU DO NOT ACCEPT THIS AGREEMENT AND OTHER POSTED POLICIES THEN DO NOT USE THE WEBSITES, DO NOT PROVIDE ANY INFORMATION TO THE WEBSITES, AND DO NOT PURCHASE ANY PRODUCTS ON THE WEBSITES.

[*Id.* at 2-3.]  The third section of the Terms is titled "Arbitration And Class Action Waiver." It states, in relevant part:

> EXCEPT WHERE PROHIBITED BY LAW, YOU AND THE COMPANY AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND THE COMPANY . . . relating to our Websites, the SERVICES AND MATERIALS published by the Company on or through the Websites, any transaction or relationship between us resulting from your use of our Websites, communications between us, or the purchase, order, or use of our MEMBERSHIP PLANS, the information provided in connection with our background information services, and your use of our background information services, INCLUDING, WITHOUT LIMITATION, TORT AND

> CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW. THE PARTIES ACKNOWLEDGE AND AGREE THAT ANY SUCH CLAIMS SHALL BE BROUGHT SOLELY IN THE PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE PROCEEDING, OR PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES FURTHER AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL. ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY A CALIFORNIA STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA").

[*Id.* at 6.]  The section also states that arbitration between the parties "will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA') and will be administered by the AAA." [*Id.* at 6-7.]  Finally, the end of the section states:

> YOU UNDERSTAND THAT BY AGREEING TO THIS ARBITRATION AGREEMENT, WHICH CONTAINS THIS CLASS ACTION WAIVER, YOU MAY ONLY BRING CLAIMS AGAINST THE COMPANY, ITS AGENTS, OFFICERS, SHAREHOLDERS, MEMBERS, EMPLOYEES, SUBSIDIARIES, AFFILIATES, PREDECESSORS IN INTEREST, SUCCESSORS AND/OR ASSIGNS IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING. IF YOU DO NOT AGREE TO THIS ARBITRATION AGREEMENT AND

CLASS ACTION WAIVER, YOU MUST TELL US IN WRITING AND NOT USE OUR WEBSITES OR MEMBERSHIP PLANS.

[*Id.* at 7.]

Defendant contends that the Terms agreed to by the parties encompass the present dispute and therefore, the parties should be compelled to arbitration. Defendant also contends that the Terms delegate threshold questions of arbitrability to an arbitrator. [Doc. No. 7 at 10-11.] Thus, Defendant argues that the arbitrator should determine whether Plaintiff's claims are subject to arbitration in the first instance. [*Id.*] The motion is now fully briefed and ripe for resolution.

## II.  Legal Standard

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving commerce. *See* 9 U.S.C. § 1 *et seq.* The FAA makes such written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (internal quotation marks and citation omitted).

Under the FAA, an aggrieved party to a written arbitration agreement "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Upon such a showing, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The scope of an arbitration clause must be interpreted liberally, and "as a

matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

### III.   Analysis

Defendant contends that the present dispute is encompassed by the Terms, which Plaintiff agreed to when he purchased a TruthFinder subscription on May 31, 2018. [Doc. No. 7-2 ¶ 4.] Defendant argues that the Court should therefore enforce the Terms, including the provision delegating the determination of arbitrability to an arbitrator, and compel Plaintiff to individually arbitrate his claims. Plaintiff contends that he does not remember agreeing to the Terms, but even if he did, he later opted out of the agreement by canceling his TruthFinder subscription. [Doc. No. 10 at 7-8.] Plaintiff also argues that his current claims against Defendant fall outside the scope of the Terms' arbitration agreement. [*Id.*]

#### a.   Validity of the Arbitration Agreement

Under the FAA, a party seeking to compel arbitration has the burden of showing that a valid, written agreement to arbitrate exists between the parties. *Ashbey*, 785 F.3d at 1323. "To determine whether the parties formed an agreement to arbitrate, courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under California law, the moving party must prove by a preponderance of the evidence that an agreement to arbitrate exists. *Id.* (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Plaintiff argues that Defendant has failed to meet its burden because it has not shown that Plaintiff "actually agreed to the arbitration provision in the [Terms] or the overall

1  [Terms] itself," just that he "must have" when he purchased a copy of his report from
2  TruthFinder. [Doc. No. 10 at 7, 14.] Plaintiff admits that he ordered a copy of his
3  background check from Defendant "sometime in May of 2018." [Doc. No. 10-1 ¶ 3.] In
4  his declaration attached to Defendant's motion, Andrew Johnson states that "[l]ike all
5  TruthFinder users, Plaintiff was required to enter his information, agree to the hyperlinked
6  [Terms] . . . as a condition to use and receive TruthFinder's services and information," such
7  that "Plaintiff could not have purchased a TruthFinder subscription without completing the
8  above steps." [Doc. No. 7-2 ¶ 9.] In his declaration attached to Defendant's reply, Johnson
9  clarifies that the screenshots in his prior declaration are those that "were displayed to
10 Plaintiff and what he completed on May 31, 2018" when Plaintiff purchased a TruthFinder
11 subscription. [Doc. No. 12-1 ¶ 3.] Johnson also states that the Terms attached to his prior
12 declaration "were the identical [Terms] hyperlinked on May 31, 2018 when Plaintiff agreed
13 to the [Terms], purchased his subscription, and thereafter retrieved and viewed his
14 TruthFinder report." [*Id.* ¶ 5.] The Court finds that Johnson's sworn statements constitute
15 sufficient evidence to demonstrate that Plaintiff agreed to the Terms when he purchased a
16 TruthFinder subscription on May 31, 2018. *See Lopez v. Terra's Kitchen, LLC*, 331 F.
17 Supp. 3d 1092, 1098 (S.D. Cal. 2018) ("[C]ourts have held that a hybrid between a
18 clickwrap and browsewrap agreement is binding where the consumer is provided with an
19 opportunity to review the terms of service in the form of a hyperlink immediately under an
20 'I Accept' button and then clicks that button."); *see also Nguyen v. Barnes & Noble Inc.*,
21 763 F.3d 1171, 1176 (9th Cir. 2014) ("Courts have also been more willing to find the
22 requisite notice for constructive assent where . . . the user is required to affirmatively
23 acknowledge the agreement before proceeding with use of the website.").

24 Plaintiff next argues that even if he agreed to the Terms when he purchased his
25 TruthFinder subscription, he "effectively opted out of" the agreement when he canceled
26 his subscription on June 5, 2018. [Doc. No. 10 at 8.] Section 3 of the Terms, the arbitration
27 provision, explicitly states: "IF YOU DO NOT AGREE TO THIS ARBITRATION
28 AGREEMENT AND CLASS ACTION WAIVER, YOU MUST TELL US IN WRITING

AND NOT USE OUR WEBSITES OR MEMBERSHIP PLANS." [Doc. No. 7-3 at 7.] Plaintiff provides no evidence that he opted out of the Terms' arbitration agreement by contacting Defendant in writing. Plaintiff only contends that he terminated the agreement by canceling his TruthFinder subscription, while offering no evidentiary support for his assertion that his cancelation resulted in termination of his contractual obligations. [Doc. No. 10 at 18.] Plaintiff then points to Section 32 of the Terms (titled "Term and Termination"), which delineates what provisions survive TruthFinder's termination of the agreement, as evidence that the arbitration provision does not survive termination. [*Id.* at 19-20.] However, he again provides no evidence suggesting that termination ever occurred. Without evidence to support Plaintiff's contention that he opted out of the Agreement or that it was terminated, the Court finds that Defendant has met its burden of establishing that a valid, written agreement to arbitrate exists between the parties. *See Ashbey*, 785 F.3d at 1323.

### b. Scope of the Arbitration Agreement

Plaintiff next argues that even if a valid agreement to arbitrate exists between the parties, his present claims against Defendant are outside the scope of the Terms' arbitration provision. [Doc. No. 10 at 20-22.]

"The question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis in original) (internal quotations omitted). But where parties have contractually delegated the arbitrability question to an arbitrator, "a court may not override the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

Here, the Terms' contractual delegation of the arbitrability question to the arbitrator is clear and explicit. Section 3 of the Terms provides: "ANY CONTROVERSY

CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT." [Doc. No. 7-3 at 6.] It also states that "THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW." [*Id.*] The Terms then provide that the arbitration will be governed by the AAA Rules, which the Ninth Circuit has found to be "clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). [Doc. No. 7-3 at 6-7.] In light of the parties' clear agreement, the Court "possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529. Therefore, the arbitrator must decide whether Plaintiff's present claims against Defendant fall within the scope of the Terms' arbitration provision.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to compel arbitration [Doc. No. 7] is **GRANTED**. The Court **ORDERS** the parties to proceed to arbitration in the manner provided for in the Terms. *See* 9 U.S.C. § 4. Accordingly, Defendant's motion to dismiss the FAC [Doc. No. 13] is hereby **DENIED AS MOOT AND WITHOUT PREJUDICE**.

In addition, the Court hereby **STAYS** this action and directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case. *See id.* § 3. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**

Dated:  October 5, 2022

Hon. Cathy Ann Bencivengo
United States District Judge